UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYMOND SERIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15 C 6262 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| BRUCE RAUNER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Raymond Serio ("Plaintiff") brings this action under 42 U.S.C. § 1983 against Illinois Governor Bruce Rauner, the Illinois Department of Corrections ("IDOC"), and a host of other defendants for alleged mistreatment he suffered while incarcerated within the IDOC. (R. 72, Second Am. Compl.) Before the Court is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by two of the defendants: Shanal Barnett,[1] a correctional medical technician ("CMT") at Stateville Correctional Facility ("Stateville"), and Kim Butler, the warden at Menard Correctional Center ("Menard"). (R. 161, Mot.) For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff has been incarcerated within IDOC for several years and was confined for a period at Stateville, Menard, and Pontiac Correctional Facility ("Pontiac"), where he is presently housed.[2] (R. 72, Second Am. Compl. ¶¶ 1-2.) In his Second Amended Complaint, he raises

---

[1] Barnett was mistakenly named as "Nurse Channel" in the second amended complaint. (R. 72, Second Am. Compl. ¶¶ 8-9.) She is referred to by her true name in this opinion.

[2] Plaintiff is not specific about certain dates in his second amended complaint, including when he arrived at IDOC, but public records show that he is serving a 50-year sentence imposed by an Illinois court in 2003. *People v. Serio*, 830 N.E.2d 749, 755 (Ill. App. Ct. 2005).

1

sprawling allegations against 19 defendants stemming from different incidents at different correctional facilities over the course of several years. (*Id.* ¶¶ 1-257.) The Court focuses here solely on the allegations against Barnett and Butler.

As to Barnett, Plaintiff alleges that in December 2013, while he was housed at Stateville, a guard (who is also named as a defendant) made him carry his personal belongings down some stairs that were wet. (*Id.* ¶¶ 8-9, 43-51.) He claims that he "slipped and lost his footing," and "his knee went out of place and popped back in[.]" (*Id.* ¶ 51.) He claims that he "slammed" his knee and right shoulder on the steel staircase. (*Id.*) He called for help, and Barnett responded. (*Id.* ¶ 52.) She allegedly told him to stand up and then "grabbed Plaintiff's leg and moved it," causing him to "scream[] in pain." (*Id.*) She told him, "Well, I can't carry you," so he would "have to walk down" the stairs. (*Id.*) Plaintiff then attempted to hop down the stairs while "[i]n horrible pain," which was so severe he "kept blacking out." (*Id.* ¶ 53.) He claims when he "woke up" he was in the health care unit "holding cage." (*Id.*) He kept asking passing prison staff members to see a medical professional, but was allegedly told by these unnamed staff members that he would "have to wait" because it was "not an emergency" and he was "not bleeding." (*Id.* ¶ 54.) He claims that at some point, Barnett came out to the holding cage and told him, "You have to stop bothering everyone. It's not going to get you seen any faster." (*Id.* ¶ 55.) Plaintiff told Barnett that he was in unbearable pain, and Barnett allegedly responded, "When the doctor gets the time, you will be brought in. That's all anyone can do for you. You will just have to wait." (*Id.* ¶ 56.) She then left the area. (*Id.*) She returned "[q]uite sometime later" and told Plaintiff to sit in an office chair; he was then wheeled into the health care unit and seen by a nurse and, later, a doctor. (*Id.* ¶ 57.) Based on these events, Plaintiff raises an Eighth Amendment deliberate

2

indifference claim against Barnett (Count II), as well as a state law claim for intentional infliction of emotional distress ("IIED") (Count VIII). (*Id.* ¶¶ 192-97, 244-48.)

As to Butler, she is not mentioned anywhere in the lengthy narrative portion of the Second Amended Complaint, but Plaintiff recounts a number of incidents involving his medical care at Menard, where he was housed from October 2014 to December 2015. (*Id.* ¶¶ 1, 110-63.) He alleges that, among other matters, various doctors, nurses, and guards at Menard mistreated him, including failing to provide him with crutches, failing to order an MRI for his knee, and delaying in providing him a "low gallery" pass so that he would not have to climb stairs to get to his cell. (*Id.*) The only allegation specific to Butler is that as warden at Menard, she "promulgated rules, regulations, policies, and procedures . . . for the provision of medical care, including emergency treatment, medical screening, and the administration of medication at Menard." (*Id.* ¶ 27.) Plaintiff alleges that Butler's "policies were implemented by and through IDOC employees, including certain individual Defendant medical care providers, who were responsible for the medical care of prisoners at Menard, including Plaintiff." (*Id.* ¶ 28.) He alleges that, as warden, Butler "had responsibility . . . for ensuring that the practices of [Menard] complied with Federal and State requirements for the treatment of prisoners, including Plaintiff." (*Id.* ¶ 28.) Based on these allegations, he asserts one claim against Butler for "unconstitutional policy and practices regarding health care services" at Menard under 42 U.S.C. § 1983 (Count IV). (*Id.* ¶¶ 205-22.) The claim is asserted against Butler in both her "official" and "individual" capacity. (*Id.* ¶ 1.)

Barnett and Butler jointly move to be dismissed as defendants. (R. 161, Mot.) Barnett argues that the allegations against her fail to state a claim for deliberate indifference under the Eighth Amendment, or for IIED under state law. (*Id.* at 7-10.) She additionally argues that the

IIED claim is barred by state law sovereign immunity principles. (*Id.* at 10-12.) Butler, in turn, argues that any claim asserted against her in her individual capacity fails because Plaintiff has not alleged that she had any personal involvement in the events underlying the complaint. (*Id.* at 4-5.) As to the official capacity claim, she argues that any claim for damages is barred by the Eleventh Amendment, and that any claim for injunctive relief is moot because Plaintiff is no longer housed at Menard. (*Id.* at 5-7.) Plaintiff believes that he has properly stated claims against Barnett under federal and state law, and that he can maintain claims against Butler in both her official and individual capacity based on the allegations included in the Second Amended Complaint. (R. 169, Resp. at 1-15.) The motion is now fully briefed. (R. 170, Reply.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). The Court can consider the complaint itself, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ANALYSIS

### I. Claims against Barnett

#### A. Eighth Amendment Claim

Barnett first argues that Plaintiff fails to state a claim against her under the Eighth Amendment. (R. 161, Mot. at 7-9.) Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). To succeed on a claim for the denial of medical care, an inmate must show "(1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry*, 604 F.3d at 440. "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk." *Id.* "Deliberate indifference is intentional or reckless conduct, not mere negligence." *Id.* In other words, "[n]either medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference[.]" *Id.* at 441.

By the same token, an inmate is "not required to show that he was literally ignored" to prove deliberate indifference. *Id.* A medical staff member's "choice of the easier and less efficacious treatment for an objectively serious medical condition" can amount to deliberate indifference. *Id.* (citation and internal quotation marks omitted). Additionally, where the medical treatment provided "was so far afield from what one would expect" under the circumstances, deliberate indifference may be inferred. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 747 (7th Cir. 2017) (citation and internal quotation marks omitted). A "significant delay" in providing effective treatment can also prove deliberate indifference, "especially where the result is prolonged and unnecessary pain." *Berry*, 604 F.3d at 441.

5

Barnett does not challenge the first prong—that Plaintiff had a serious medical need—but argues that Plaintiff's allegations do not establish the subjective component of the deliberate indifference standard. (R. 161, Mot. at 8-9.) The Court disagrees. Giving Plaintiff the inferences to which he is entitled at this stage, he has adequately alleged a deliberate indifference claim against Barnett.

To recap, Plaintiff alleges that he fell on the stairs, severely injuring his knee and shoulder, but that notwithstanding the injury to his knee, Barnett told him to stand up and then "grabbed" his leg in a manner that caused him to "scream[] in pain." (R. 72, Second Am. Compl. ¶ 52.) He claims that Barnett then callously forced him to "hop[]" down a flight of stairs even though he was severely injured, rather than calling for additional help or taking other steps to ensure that he did not exacerbate the injury. (*Id.* ¶ 53.) It can be reasonably inferred that Barnett was the one who had Plaintiff taken to the holding cage while he was passed out (Plaintiff apparently does not know for sure because he was unconscious), rather than taking him to be seen immediately by a doctor. (*Id.*) Plaintiff further alleges that Barnett was well aware that he was in the holding cage in severe pain for "[q]uite some time," but she allegedly brushed off his complaints of pain and told him to "stop bothering everyone." (*Id.* ¶¶ 55-57.)

Accepting these allegations as true, they are adequate to state a claim against Barnett for potentially exacerbating Plaintiff's injury and/or improperly delaying his treatment by a doctor. *See Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (observing that deliberate indifference occurs where the defendant provides "blatantly inappropriate" treatment "in light of the severity of the condition and professional norms"); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.");

6

*Thornton v. Baker*, No. 13 C 8029, 2016 WL 4450870, at *3 (N.D. Ill. Aug. 24, 2016) ("Ignoring an inmate's complaints of pain, resulting in unnecessary exposure to pain, satisfies the deliberate indifference standard."). It can be discerned from the complaint (as well as the motion to dismiss) that Barnett might have felt Plaintiff was malingering or exaggerating, but whether his complaints of pain were legitimate cannot be determined at this early stage. *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (concluding that "[t]he fact that [the defendants] may have based their refusal to treat [the plaintiff's] pain on a good-faith belief that he was malingering, that he was not in pain but was merely trying to get high with the narcotic painkiller, is an issue for the jury"). Therefore, the Court declines to dismiss this claim.

### B. IIED Claim

Barnett next argues that Plaintiff has failed to allege the type of extreme and outrageous conduct necessary to establish an IIED claim. (R. 161, Mot. at 9-10.) To state an IIED claim under Illinois law, the plaintiff must allege that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant intended that his conduct would cause severe emotional distress, or knew that there was at least a high probability that the conduct would inflict severe emotional distress; and (3) the conduct did in fact cause severe emotional distress." *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016). Such a claim "requires more than mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (citation and internal quotation marks omitted). "[O]ne factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff." *Id.*

Whether Plaintiff has stated an IIED claim presents a closer question, but in light of liberal federal pleading standards, the Court concludes that this claim survives dismissal. As outlined above, Plaintiff alleges that he fell and severely injured his knee and shoulder. (R. 72,

Second Am. Compl. ¶¶ 50-51.) Since he was a prisoner, he had no means of tending to these injuries himself, and instead relied entirely on prison staff, including Barnett, to ensure that he received adequate treatment. *Mitchell v. Kallas*, 895 F.3d 492, 496 (7th Cir. 2018) ("It is well established that persons in criminal custody are entirely dependent on the state for their medical care."). Notwithstanding Plaintiff's injuries, Barnett allegedly handled him roughly, telling him to stand up and "grabb[ing]" his leg in a manner that caused him to "scream[]" out in pain. (R. 72, Second Am. Compl. ¶ 51.) She then forced him to walk down a flight of stairs, which he could only do by hopping on one foot—an act both painful and humiliating—and then took him to a holding area rather than to be seen by a doctor. (*Id.* ¶ 53.) When he continued to complain to her about being in extreme pain, she allegedly told him to "stop bothering everyone." (*Id.* ¶¶ 55-57.) Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has stated a claim for IIED against Barnett. *See Piercy v. Warkins*, No. 14 CV 7398, 2017 WL 1477959, at *22 (N.D. Ill. Apr. 25, 2017) (allowing IIED claim to proceed where prisoner alleged that prison nurse failed to adequately treat his serious medical condition); *Awalt v. Marketti*, 74 F. Supp. 3d 909, 942 (N.D. Ill. 2014) ("[A] reasonable juror could find that ignoring a patently severe medical condition . . . is extreme and outrageous conduct, especially because the [defendants] had complete authority over [the plaintiff] because he was incarcerated" (citation, internal quotation marks, and alteration omitted)).

Barnett alternatively argues that this claim is barred by state sovereign immunity. (R. 161, Mot. at 10-12.) Under the Illinois State Lawsuit Immunity Act, the State of Illinois and its agents are generally immune from suit in any court except the Illinois Court of Claims.[3] 745 ILL. COMP. STAT. 5/1; *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016), *aff'd*, 138 S. Ct. 784

---

[3] Under the *Erie* doctrine, the Illinois immunity statute applies to claims in federal court arising under state law. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), *aff'd*, 138 S. Ct. 784 (2018).

8

(2018). A claim must be dismissed on grounds of immunity if "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Murphy*, 844 F.3d at 658 (citation omitted). However, "[i]f the plaintiff alleges that state officials or employees violated statutory or constitutional law, sovereign immunity affords no protection." *Id.* at 658-59 (citation and alternation omitted omitted). "This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Id.* at 659 (citation omitted).

That is the case here: Plaintiff alleges that Barnett violated his constitutional right to adequate medical care in connection with her conduct, and this same conduct gives rise to his IIED claim. (R. 72, Second Am. Compl. ¶¶ 51-56, 244-51.) Thus, the IIED claim is not barred by state sovereign immunity. *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *6 (N.D. Ill. June 13, 2016) (denying correctional officers' motion to dismiss on grounds of sovereign immunity, where prisoner alleged that they had violated his constitutional rights in failing to provide him with needed medical care, which also gave rise to IIED claim); *Chatman v. City of Chicago*, No. 14 C 2945, 2015 WL 1090965, at *11 (N.D. Ill. Mar. 10, 2015) (declining to dismiss state law claims as barred by sovereign immunity where plaintiff alleged that defendant violated state law and the U.S. Constitution); *Liebich v. Hardy*, No. 11 C 5624, 2013 WL 4476132, at *11-12 (N.D. Ill. Aug. 19, 2013) (finding IIED claim against correctional officers not barred by sovereign immunity where it depended on plaintiff's alleged constitutional

9

claim). Therefore, the Court declines to dismiss Plaintiff's claims against Barnett. This aspect of the motion is denied.

## II. Claim against Butler

As outlined above, Plaintiff raises one claim against Butler for the denial of medical care under 42 U.S.C. § 1983, and asserts this claim against her in both her individual and official capacity. (R. 72, Second Am. Compl. ¶¶ 1, 205-222.) Butler argues that she cannot be sued in either capacity based on the allegations contained in the second amended complaint. (R. 161, Mot. at 3-7.)

### A. Individual Capacity Claim

Butler first argues that the individual capacity claim must be dismissed because Plaintiff fails to allege that she was personally involved in his medical care. (*Id.* at 3.) "For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell*, 895 F.3d at 498; *see also Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003) ("In addition to the element of deliberate indifference, § 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." (internal citation omitted)). Additionally, defendants can be held personally liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 870 (7th Cir. 2011). In other words, "[a]lthough direct participation is not necessary, there must at least be a showing that the [defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer*, 327 F.3d at 594.

Butler cannot be held personally liable under 42 U.S.C. § 1983 simply because she was the warden at Menard or because she supervises other prison employees who allegedly violated

Plaintiff's rights. *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 403 (7th Cir. 2018) (observing that "*respondeat superior* liability . . . does not apply under § 1983"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996) (finding it unlikely, as a general matter, that high-level prison officials would have direct involvement in or knowledge of specific medical decisions or incidents involving a specific inmate); *Foster v. Ghosh*, No. 11 C 5623, 2013 WL 3790905, at *4 (N.D. Ill. July 19, 2013) ("[The warden] is not liable under the doctrine of deliberate indifference for simply serving in his administrative role at the Stateville Correctional Center."). But where a prisoner "alleges systemic, as opposed to localized, violations of the denial of medical care, an inference may be drawn that the [warden and other high-level officials] . . . would have known of or participated in the alleged violations." *Taylor*, 2016 WL 3227310, at *3; *see also Warren ex rel. Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923, at *6 (N.D. Ill. Nov. 24, 2010) ("A senior jail official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systemic inadequate conditions at the jail.").

Plaintiff has clearly alleged that there were systemic problems with the medical care at Menard, including but not limited to "the failure to provide and maintain adequate staffing levels, resulting in lengthy, dangerous, and injurious delays" in prisoners receiving necessary medical treatment. (R. 72, Second Am. Compl. ¶ 214.) A reasonable inference can be drawn that, as warden, Butler would be involved in or aware of a systemic problem with staffing levels or other deficiencies in the medical care at the prison she oversaw. *See Antonelli*, 81 F.3d at 1428-29 (allowing claims to proceed against high-level prison officials where claims involved "potentially systemic" and not "clearly localized" constitutional violations); *Taylor*, 2016 WL

3227310, at *3 (declining to dismiss claims against warden and other high-level prison officials for lack of personal involvement where the plaintiff alleged systemic problems with prison's medical care services). At this point, the Court must draw all reasonable inferences in Plaintiff's favor, *Kubiak*, 810 F.3d at 480-81, and in doing so, the Court finds that he adequately stated a claim against Butler in her individual capacity. This aspect of the motion is denied.

### B. Official Capacity Claim

Butler next argues that an official capacity claim seeking money damages from her is barred by the Eleventh Amendment. (R. 161, Mot. at 5.) "An official capacity suit is the same as a suit against the entity of which the officer is an agent." *DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973, 974 n.1 (7th Cir. 2000). Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens[.]" *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Thus, unless sovereign immunity is waived by the state or expressly abrogated by Congress, a state cannot be sued for damages by a private citizen in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002). State agencies like the IDOC, and officials within that agency, are treated the same as the state itself for Eleventh Amendment purposes, and are protected by sovereign immunity. *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (holding that prisoner's claim for money damages against IDOC officials acting in their official capacity was "barred by the Eleventh Amendment"); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) ("The Department of Corrections is immune from suit by virtue of the Eleventh Amendment.").

Indeed, in his response brief, Plaintiff "concedes that Warden Butler may not be sued for money damages in her official capacity[.]" (R. 169, Resp. at 4.) The Court agrees, and any such claim contained in the Second Amended Complaint is dismissed.

Plaintiff nevertheless argues that he is also seeking prospective injunctive relief against Butler, which is not barred by the Eleventh Amendment. (*Id.*) This is true as a general matter. *Doe v. Holcomb*, 883 F.3d 971, 981 (7th Cir. 2018) ("[A]n aggrieved person may sue . . . [a] responsible official for prospective injunctive relief without running afoul of the Eleventh Amendment."). But the problem here is that, according to the complaint, Plaintiff has not been housed at Menard since 2015. (R. 72, Second Am. Compl. ¶ 1.) "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (citation and internal quotation marks omitted). Plaintiff speculates that he could be transferred at any time to another prison, including Menard, because he has been transferred among various prisons "five times in as many years" and is serving a 50-year sentence. (R. 169, Resp. at 4 n.2.) However, there is nothing before the Court to suggest that a transfer to Menard is imminent, and "[a]llegations of a likely retransfer may not be based on mere speculation." *Higgason*, 83 F.3d at 811; *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (affirming dismissal of prisoner's request for injunctive relief as moot in light of his transfer because he "has not shown a realistic possibility that he will again be incarcerated in the same state facility"). If the Court were to accept Plaintiff's argument, he could effectively seek injunctive relief against officials at *any* prison in Illinois, since he could theoretically be transferred to another prison within the state at any time. That is not the law in this Circuit. *Maddox*, 655 F.3d at 716; *Higgason*, 83 F.3d at 811. Therefore, the official capacity claim against Butler is dismissed.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (R. 161) is GRANTED in part and DENIED in part. The official capacity claim against Defendant Kim Butler is DISMISSED. The motion is DENIED in all other respects. The parties shall appear for a status hearing on September 19, 2018, at 9:45 a.m. They are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the next status hearing.

ENTERED: *[signature]*

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: September 17, 2018**